# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FAMILIES OF SPINAL <br> MUSCULAR ATROPHY, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. 16-cv-4262 |
| v. | ) <br> ) | Hon. Amy J. St. Eve |
| NATIONWIDE CHILDREN'S <br> HOSPITAL and THE RESEARCH <br> INSTITUTE AT NATIONWIDE <br> CHILDREN'S HOSPITAL, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Nationwide Children's Hospital and The Research Institute at Nationwide Children's Hospital (collectively, "Defendants") have moved to dismiss Plaintiff Families of Spinal Muscular Atrophy's complaint under Federal Rule of Civil Procedure 12(b)(6). [24] For the following reasons, the Court grants Defendants' motion without prejudice.

## BACKGROUND[1]

Plaintiff is a nonprofit corporation that funds research related to Spinal Muscular Atrophy ("SMA"), a genetic disease, and Defendants conduct research on topics including SMA

---

[1] The facts presented in the Background are taken from the complaint and are presumed true for the purpose of resolving the pending motion to dismiss under Rule 12(b)(6). *See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, although the parties filed numerous documents under seal, the Seventh Circuit has held that "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *see also United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009) (Easterbrook, C.J., in chambers) (sealed documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.").

treatments. (Compl. at 2–3, Exs. A–B.)[2] This case concerns whether two separate research-funding agreements between the parties entitle Plaintiff to proceeds from a licensing agreement between Defendants and a third party.

In September 2009, Defendants applied for a grant for a project entitled "Optimizing Titer and Window of Opportunity for targeting Motor Neurons via an AAV9 vector in Newborn Non-human primates."[3] (*Id.*, Ex. A at 6.) Plaintiff agreed to fund the project, and, in April 2010, the parties entered into a Grant Agreement (the "GA"). (*Id.* at ¶¶ 12–17, Ex. A at 1.) The GA gave Defendants a $100,000 budget, and Defendants agreed to pay Plaintiff "five percent (5%) of all royalty or other cash income received by the [Defendants] from licenses or sublicenses to all of the Inventions developed from activities under this Agreement." (*Id.* at ¶ 15, Ex. A at 1, 3.) The GA defines the term "Inventions" as "any invention (or other intellectual property), whether patentable or unpatentable conceived or first actually reduced to practice as part of the activities under this Agreement." (*Id.* at ¶ 14, Ex. A at 2.)

Later, in May 2012, the parties entered into a second agreement, the Research Collaboration Agreement (the "RCA"), to "conduct a . . . research project entitled 'IND Enabling Studies for a CNS Delivered Gene Therapy for Spinal Muscular Atrophy.'" (*Id.* at ¶¶ 18–23, Ex. B at 1.) Under the RCA, Defendants had a maximum budget of $300,000, (*id.*, Ex. B at 1,

---

[2] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (alteration in original) (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)). Therefore, "[t]he Court properly considers exhibits attached to the complaint in ruling on a 12(b)(6) motion to dismiss." *See McWorthey v. Tech. Ins. Co.*, No. 15-cv-5021, 2016 WL 4398063, at *3 n.3 (N.D. Ill. Aug. 18, 2016).

[3] While it is not critical to the Court's resolution of the motion before it, some background regarding the technology at issue is helpful. Defendants explain that they created a "therapy technology" that "consists of delivering copies of a gene known as SMN, which is deficient in SMA sufferers, via a proprietary virus known as AAV9 specially modified to carry the SMN gene replacement therapy to the [central nervous system]." (R. 27, Defs.' Mem. Supp. Mot. Dismiss, at 2.) According to Defendants, they have developed methods "for both systemic delivery (*i.e.*, intravenously into the blood stream) and intrathecal delivery (*i.e.*, directly into the cerebrospinal fluid)." (*Id.*)

10), and Defendants agreed to "pay [Plaintiff] five percent (5%) of all royalty[ and] other consideration up to a cap of $300,000, received by the [Defendants] from licenses or sublicenses to any of the Inventions solely or jointly owned by [Defendants]," (*id.* at ¶ 21, Ex. B at 3). The RCA defines the term "Inventions" as "any potentially patentable invention conceived in the performance of the Research Project." (*Id.* at ¶ 20, Ex. B at 3.) The RCA further provides that "the existing inventions and technologies of [Defendants] . . . are their separate property and are not affected by this Agreement, and [Plaintiff] shall not have any claims to or rights in such existing inventions and technologies." (*Id.*, Ex. B at 3.) In March 2015, the parties amended the RCA, raising both the maximum budget of the project as well as the cap on "royalty and other consideration" payments Defendants would make to Plaintiff if Defendants licensed any "Inventions." (*Id.* at ¶ 23, Ex. B-1 at 1.)

In September 2013, Defendants entered into a license agreement with BioLife Cell Bank, Inc., which is now known as AveXis, Inc. (*Id.* at ¶¶ 24–25, Ex. C.; R. 27, Defs.' Mem. Supp. Mot. Dismiss, at 2; R. 34, Pl.'s Resp., at 1 & n.1.) The agreement gives AveXis an exclusive license to SMN AAV9 delivery technology as represented by various patent applications and associated "Technical Information," which includes "research and development information, unpatented inventions, and know-how pertaining to the Licensed Patents." (Compl. at ¶¶ 3–4, 28–29, Ex. C at 1–3, 21, 22.) In exchange, the agreement provides that Defendants would receive over 200,000 shares of AveXis stock. (*Id.* at ¶ 33, Ex. C at 8.) Additionally, the license agreement provides that Defendants will receive payments, subject to certain conditions, at regulatory milestones—specifically, $75,000 for "Approval by the FDA of a Biologics License Application for the scAA V9-SMN gene therapy product for spinal muscular atrophy type 1 for vascular delivery" and $50,000 for "Approval by the FDA of a Biologics License Application for

3

the scAA v9-SMN gene therapy product for intrathecal delivery." (*Id.* at ¶ 32, Ex. C at 8.) Finally, the license agreement entitles Defendants, under certain circumstances, to royalty payments based on "Net Sales of Licensed Products" and sublicenses granted by AveXis. (*Id.*, Ex. C at 8–9.)

Between January 2014 and October 2015, AveXis and Defendants amended the license agreement four times. (*Id.* at ¶ 34, Ex. C-1.) The January 2014 amendment obligates AveXis make additional payments to Defendants at certain dates and milestones, totaling $50,000. (*Id.* at ¶ 35, Ex. C-1 at 9.)

To date, Plaintiff alleges that Defendants have received a total of $243,163 in cash payments from AveXis. (*Id.* at ¶ 38.) Plaintiff also alleges that, due to license-agreement terms concerning the nondilution of stock, Defendants "currently ha[ve] title to 442,410 shares in AveXis." (*Id.* at ¶ 44.)

Based on these facts, Plaintiff asserts that Defendants breached the GA and the RCA by failing to make payments to Plaintiff after licensing "Inventions" to AveXis. (*Id.* at 1–2, 8–9.) Plaintiff therefore requests the following relief: judgments that Defendants breached the GA and RCA, "an order that an accounting be held of all cash and consideration received to date by [Defendants] under the [GA and RCA]," and "damages sustained as a result of [Defendants'] breach." (*Id.* at 9). Specifically, Plaintiff seeks "monetary damages of 5% of all cash received by [Defendants] per the [GA and RCA]," "an order that [Defendants] transfer to [Plaintiff] title in 5% of the 442,410[ A]veXis shares (22,121 shares) issued to [Defendants]," and "an order that [Defendants] transfer to [Plaintiff] 5% of the proceeds of any sales of shares by [Defendants] per the [GA], and any of those shares transferred to other parties." (*Id.* at 9–10.)

On July 15, 2016, Defendants filed the current motion, (R. 24), which the Court grants

4

without prejudice.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## ANALYSIS

The parties appear to agree that Ohio law governs the GA and RCA. (R. 27 at 14 & n.14; R. 34 at 12.) To establish breach of contract under Ohio law, a plaintiff must prove (1) the existence of a contract; (2) the plaintiff performed its contractual obligations; (3) the defendant's breach; and (4) resulting damages. *See V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012); *Kline v. Mortg. Elec. Sec. Sys.*, 154 F. Supp. 3d 567, 603 (S.D. Ohio 2015);

*Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *7 (N.D. Ill. July 9, 2007) (citing Ohio law).

Defendants argue that Plaintiff fails to adequately plead the element of breach for two reasons. First, Defendants contend that Plaintiff fails to sufficiently allege "(1) what Invention(s) were 'conceived or first actually reduced to practice' in the GA Project or 'conceived in the performance' of the RCA Project, and (2) how such Invention(s) were subsequently licensed by [Defendants] to AveXis." (R. 27 at 15.) Consequently, Defendants maintain, Plaintiff has failed to plead Defendants' obligation under the GA or RCA to compensate Plaintiff based on proceeds from the license agreement between AveXis and Defendants. (*Id.*) Second, Defendants argue that (1) "Plaintiff's claims fail for the additional and independent reason that Plaintiff could never plead its way around the undisputed evidence[4] establishing that the technology licensed by [Defendants] to AveXis was conceived and first reduced to practice *long before the GA or RCA were even executed*," and (2) because this evidence conclusively bars Plaintiff's claims, the Court should dismiss the case with prejudice. (*Id.* at 18–25.) As detailed below, the Court agrees with Defendants' first argument and does not reach their remaining contentions at this time.

As previously described, the GA gives Plaintiff the right to compensation based on Defendants' licensing of "Inventions" developed during research conducted under the agreement. (Compl. at ¶ 15, Ex. A at 3.) The GA defines the term "Inventions" as "any invention (or other intellectual property), whether patentable or unpatentable conceived or first actually reduced to practice as part of the activities under this Agreement." (*Id.* at ¶ 14, Ex. A at 2.) Similarly, the RCA gives the Plaintiff the right to compensation based on Defendants'

---

[4] The evidence to which Defendants refer includes documents that Plaintiff did not attach to its complaint—for example, patent applications and scientific articles. (*See* R. 27. at 1–13.)

licensing of "Inventions," which are defined as "any potentially patentable invention conceived in the performance of the Research Project." (*Id.* at ¶¶ 20–21, Ex. B at 3.) Thus, Plaintiff's right to compensation turns on whether Defendants licensed (1) any invention "conceived or first actually reduced to practice" during GA research, or (2) any invention "conceived in the performance of [RCA research]." Put another way, the licensing of any technology that Defendants developed before or outside the scope of the GA or RCA projects does not trigger a duty for Defendants to compensate Plaintiff.

An obvious question thus arises: what is the "Invention"—as defined under the GA or RCA—that Plaintiff alleges Defendants licensed to AveXis without compensation? Perhaps it is the entirety of the technology that Defendants have developed for systemic and intrathecal delivery of gene replacement therapy, or perhaps it is some small step in the treatment procedures Defendants have created. Plaintiff's complaint leaves Defendants (as well as the Court) to guess, as it merely indicates in a conclusory fashion that "[t]he research sponsored by [Plaintiff] resulted in 'Inventions,' as defined by the terms of [the GA and RCA]." (*Id.* at ¶ 2; *see also id.* at ¶ 17 ("The research sponsored by [Plaintiff] in accordance with the [GA research project] resulted in 'Invention(s).'").)

According to the Seventh Circuit, a plaintiff "must 'include enough details about the subject-matter of the case to present a story that holds together.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). Here, Plaintiff's failure to specify or provide details regarding what "Invention" Defendants licensed leaves too large a plot hole in the story to permit this case to advance at this time. *See Griffin v. U.S. Bank N.A.*, 15 CV 6871, 2016 WL 3671450, at *5 (N.D. Ill. July 11, 2016) (concluding that a plaintiff failed to

successfully plead breach of contract because he merely "reiterate[d] certain paragraphs of the [contract] and generally alleges that defendants breached those paragraphs by charging and collecting costs and fees that were not authorized," instead of "indicat[ing] what unauthorized fees and costs he was assessed and paid or how such an assessment breached the [contract]" (citation omitted)); *see also Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (explaining that the district court properly dismissed a breach of contract claim because, among other reasons, the plaintiff "provide[d] scant factual basis" for the element of breach); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023–24 (N.D. Ill. 2009) (explaining that because plaintiffs alleged breach of fiduciary duty "only in the most general terms," plaintiffs' claims were "no more than conceivable" and therefore failed to satisfy *Twombly*'s pleading requirement). Moreover, the shortcomings of Plaintiff's allegations are of particular concern in this case because it is fairly complex, as the Court may have to wade through technical facts, patent applications, and scientific articles to determine when particular medical innovations arose. *See Adams*, 742 F.3d at 733 (explaining that the amount of factual allegations required to state a plausible claim depends on the complexity of the case); *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011).

Beyond pointing to the general vagueness of Plaintiff's allegations of breach, Defendants cite *Palda v. General Dynamics Corp.*, 47 F.3d 872 (7th Cir. 1995),[5] to show that dismissal is proper under Seventh Circuit case law presenting a factual scenario similar to the one at issue

---

[5] While *Palda* is a pre-*Twombly* case, it is instructive because a claim that was insufficient under the less stringent pre-*Twombly* standard would be insufficient under the post-*Twombly* standard. *See, e.g.*, *Wilbert Funeral Servs., Inc. v. Custom Servs. Unlimited, LLC*, No. 10 C 3272, 2010 WL 4627663, at *2 (N.D. Ill. Nov. 5, 2010) (explaining, in the context of whether to strike an affirmative defense, that it is unnecessary to consider whether pre-*Twombly* or post-*Twombly* standards apply because the "defense fails . . . even under pre-*Twombly* standards"); *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 512 (S.D.N.Y. 2010) (describing the pre-*Twombly* pleading standard as "less stringent"). It is perhaps for this reason why Plaintiff does not challenge Defendants' reliance on *Palda* on the grounds that it is a pre-*Twombly* case.

here. Specifically, Defendants argue that *Palda* stands for the proposition that pleadings that "merely parrot[ a] contract's prerequisites but fail[] to 'explain or elaborate on' them" are insufficient to survive a motion to dismiss. (R. 41, Defs.' Reply, at 3.) In *Palda*, an employee entered an agreement "provid[ing] that in the event of certain triggering circumstances leading to [the employee's] termination, including a 'change of control' in corporate ownership as defined in the agreement, [the employee] would be entitled to severance benefits." 47 F.3d at 873. After he was terminated, the employee sued, contending that "he was terminated as a result of a reorganization that constituted a 'change of control' as defined in the agreement" and therefore was entitled to benefits. *Id.* As support, the employee alleged that the employer had "changed the composition of its board of directors and top management, sold portions of its manufacturing business and other major holdings, attempted to sell other portions of its business, and altered the shareholder makeup of the corporation." *Id.*

The Seventh Circuit noted that the contract in question defined the term "change of control" as "the occurrence of one of four specific events." *Id.* at 874. One of those events—the one the employee relied upon in his complaint—required shareholder approval. *Id.* The employee, however, "failed to plead any facts relating to this shareholder approval"; instead, he merely made the conclusory allegation that "defendant implemented a reorganization and consolidation of its business *with shareholder approval*." *Id.* at 875. The Seventh Circuit therefore held that the employee failed to state a claim because "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Id.*

Defendants contend that just as the employee in *Palda* "merely track[ed] the contract's definition of 'change of control,' but alleg[ed] no actual *facts* as to how the 'change of control'

9

occurred," Plaintiff here merely asserts that there was an "Invention" without providing support. (R. 27 at 17.) The Court agrees, and dismissal is therefore proper. *See also Iqbal*, 556 U.S. at 678 (explaining that "'naked assertion[s]' devoid of 'further factual enhancement'" do not sufficiently support a claim (alteration in original) (quoting *Twombly*, 550 U.S. at 557)); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[S]ome factual allegations will be so sketchy . . . that they fail to provide sufficient notice to defendants of the plaintiff's claim.").

Plaintiff argues that it cannot plead "unknown details" about Defendants' research because it does not have access to their laboratory records and research results. (R. 34 at 13.) A plaintiff's "pleading burden should be commensurate with the amount of information available to them." *Olson v. Champaign County*, 784 F.3d 1093, 1100 (7th Cir. 2015) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)). Plaintiff, however, has a general understanding of the research Defendants conducted—after all, Plaintiff funded this research— and also has access to the license agreement between Defendants and AveXis. Thus, it is not unreasonable to expect Plaintiff to provide some detail regarding the "Inventions" it believes Defendants licensed. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 6845862, at *4 (N.D. Ill. Dec. 4, 2014) ("While the pleading standard under the federal rules is very liberal, the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." (internal quotation marks omitted) (quoting *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001))). Moreover, Plaintiff provides some detail regarding the "Inventions" it has in mind in its response brief. Plaintiff, for example, says that it "is not claiming the entire SMN AAV9 Delivery Technology is an Invention under the GA, nor does it claim the entire intrathecal delivery of the technology is an Invention under the RCA."

10

(R. 34 at 19.) Plaintiff also explains that the GA study "resulted in the important and seminal discovery that the technique of delivering the therapy to non-human primates regardless of age would result in efficient motor neuron targeting," and that "[t]his reduction to practice of the technique of applying the SMN AAV9 Delivery Technology to non-human primates older than newborns was first completed under the research funded by the GA." (*Id.* at 21.) Similarly, Plaintiff argues that "[t]he use of the Trendelenberg position to improve efficiency of the [intrathecal delivery] technology was first conceived of during the research funded by the RCA." (*Id.*) That Plaintiff is capable of giving details in its response brief about various innovations that arose from GA and RCA research belies its claim that it is unable to provide details about Defendants' "Inventions" without discovery.

Plaintiff also argues that various documents—some of which it attached to its complaint—provide the necessary details regarding the "Inventions" that resulted from GA and RCA research. (*See* R. 34 at 14–15.) Plaintiff, for example, points to the titles and research aims of the GA and RCA. Even if it were sufficient to meet Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" by merely attaching documents to a complaint, *see Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 79–80 (1st Cir. 2014) ("[I]t is not [the court's] job, in an effort to ferret out the adequacy of a plaintiff's pleaded allegations, to haphazardly mine documents appended to a complaint."); *Nichols v. Vilsack*, No. 13-01502 (RDM), 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (explaining that "courts are not responsible for hunting through the record in search of material potentially helpful to a party's case" and that "asking the Court to comb through the attachments [to a complaint] to discern the substance of the plaintiff's claims risks placing it more in the role of advocate than judge and risks denying the defendant fair notice and an

11

opportunity to respond to identifiable allegations of wrongdoing"), the documents to which Plaintiff points do not indicate what "Inventions" actually resulted from Defendants' research. Accordingly, Plaintiff's argument is unavailing.

In short, Plaintiff's cryptic allegation that the research it funded resulted in "Inventions" is insufficient to survive Defendants' motion. The Court, however, does not consider Defendants' other arguments at this time. Most notably, the Court cannot address at this procedural stage Defendants' argument that various documents that Plaintiff did not attach to its complaint conclusively establish that Defendants did not license any "Inventions" because the Court cannot determine if Defendants are raising an issue of fact given the current allegations in the complaint. If the Court is ultimately able to consider these documents and Defendants' argument, it is sensible to do so only after Plaintiff indicates what "Inventions" form the basis of its claims. Accordingly, the Court's dismissal is without prejudice. *See Runnion*, 786 F.3d at 519 ("Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."); *Foster v. Schock*, No. 15-cv-03325, 2016 WL 1555650, at *2 (N.D. Ill. Apr. 18, 2016) ("Because plaintiffs are generally provided an opportunity to replead following an initial dismissal for failure to state a claim, this dismissal is without prejudice." (citing *Bausch*, 630 F.3d at 562)).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss without prejudice.

Dated: September 19, 2016

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge